**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Janet Pierzynski,

      Plaintiff,

Case No: 10-14369

Honorable Victoria A. Roberts
United States District Judge

vs

Liberty Life Assurance Company of Boston,

      Defendant.
_____/

**ORDER**

**I. INTRODUCTION**

      Before the Court are cross motions for summary judgment concerning the denial of Long Term Disability ("LTD") benefits to Plaintiff Janet Pierzynski ("Pierzynski"). The denial was pursuant to a plan governed by the Employee Retirement Income Security Act ("ERISA"). Both parties submitted briefs for judgment on the administrative record for the denial of benefits. In addition, Defendant Liberty Life Assurance Company of Boston ("LLAC") submitted the administrative record for the Court's review (pages in this administrative record are sequentially numbered from LL-0001 to LL 0802, and are cited this way).

      The Court **GRANTS** Plaintiff's Motion to the extent she seeks benefits under the "own occupation" standard and **DENIES** Plaintiff's Motion to the extent she seeks benefits under the "any occupation" standard. Defendant's motion is **DENIED.**

1

## II. BACKGROUND

### a. *Basic Background Information*

Pierzynski was employed by DTE Energy in its Information Technology Department ("IT") from 1994 to July 22, 2010.  Along the way, Pierzynski was promoted to Information Technology Special Projects Supervisor, a management level position.

While employed with DTE Energy, Pierzynski was covered by a group disability benefit plan ("plan" or "policy") with Defendant LLAC which provided coverage to DTE employees.  This policy was issued on August 1, 2005, and provided coverage for, inter alia, LTD benefits.  Both parties agree that this plan is governed by ERISA and that Plaintiff is a "Covered Person."

Plaintiff last worked on July 18, 2009.  Her claim was denied on November 13, 2009.  She was terminated on July 22, 2010.

### b. *Relevant Policy Provisions*

The policy provides its LTD coverage in a tiered system.

"Disability" or "Disabled" means:

(i) if the Covered Person is eligible for the 24 Month Own Occupation benefit, 'Disability' or 'Disabled' means that during the Elimination Period [182 days] and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of [her] regular occupation or any occupation with the company for which the Covered Person is qualified and which is offered at not less than their current rate of pay, and (ii) thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial duties of Any Occupation.

LL-0008

2

The policy requires proof of injury or sickness.

Proof means the evidence in support of a claim for benefits and includes, but is not limited to, the following:

1.  A claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;

2.  An attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending  Physician; and

3.  The provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.

LL-0011

The parties disagree as to what constitutes proof; what constitutes 'objective medical evidence' is particularly in dispute.

### a.  *Occupational Requirements*

While the occupational requirements for Pierzynski's job are not in dispute, the parties do disagree on whether Pierzynski can meet those requirements.  In summary, Pierzynski's IT Supervisor position was sedentary, requiring her to provide leadership support to the IT staff, perform performance evaluations and employee development for her staff, manage medium to large scale projects simultaneously, represent DTE in business relationships, and provide problem resolution.  *See* LL 0067, 636-37.

The physical requirements of the job are not strenuous.  They include the ability to sit, stand, and walk.  *Id.*  The job requires highly functioning cognitive abilities, such as the ability to concentrate, think, reason, and communicate.  *Id.*

Plaintiff argues that her medical condition left her in constant pain and affected her ability to perform her job.  Defendant argues that reasonable accommodations can

be made to alleviate her medical condition, and that, with these accommodations, Plaintiff would be able to perform her job and would not be eligible for LTD benefits. Reasonable accommodations that could be made include commercially available devices which allow Plaintiff to alternate between sitting and standing while using her computer. *See* LL-0413.

### b. *Pierzynski's Medical History and LLAC's Denial of LTD benefits*

Plaintiff has been diagnosed with, *inter alia*, lumbar stenosis, lumbar facet arthropathy, lumbar degenerative disc disease, cervical herniated disk, and Type II diabetes. The degree of pain caused by these ailments, and the reasonable accommodations which could be made to address them, are disputed.

Plaintiff filed for disability benefits citing "significant pain which was aggravated with activity and that she could only sit, stand or walk for brief periods of time." Doc. 26 at 8. After receiving her medical records, LLAC conducted a file review by Dr. Kaplan, who confirmed Plaintiff's diagnosis of mild lumbar degenerative disc disease and facet arthropathy, but concluded that "[t]he records do not support any ongoing restrictions or limitations that would prevent full time work in a sedentary capacity." *Id.* at 9' LL-0292-96.

LLAC denied Plaintiff's claim on November 13, 2009. Plaintiff appealed LLAC's denial on June 29, 2010, and provided LLAC with updated medical records including test results, letters from her physicians, and other relevant information.

4

LLAC then conducted another file review, this time by Dr. Judith Esman of MLS Peer Review Services.  Dr. Esman confirmed Plaintiff's various medical diagnoses; however, her opinion was that while these conditions cause pain, reasonable accommodations could be made to allow Plaintiff to change positions from sitting to standing as needed.

LLAC again denied Plaintiff's claims on September 1, 2010.  Plaintiff then filed this lawsuit.

## IV. ARGUMENT

### a.  Standard of Review

A participant or beneficiary of an ERISA qualified plan may file suit in federal court to recover benefits under the terms of a qualified plan.  29 U.S.C. § 1132(a)(1)(B).  Courts review the denial *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989).  If a plan includes such discretionary authority, then a more deferential "arbitrary and capricious" standard applies.  *Yeager v. Reliance Standard Life Insurance Co.*, 88 F.3d 376, 381 (6th Cir. 1996).

On March 1, 2007, Michigan banned policies containing discretionary authority clauses that would trigger an arbitrary and capricious standard of review.  MICH. ADMIN. CODE R. 500.2201-02 (2011).  The code states:

(b) [After July 1, 2007], an insurer shall not issue, advertise, or deliver to any person in this state a policy, contract, rider, indorsement, certificate, or

5

similar contract document that contains a discretionary clause. This does not apply to a contract document in use before that date, but does apply to any such document revised in any respect on or after that date.

(c) [After July 1, 2007], a discretionary clause issued or delivered to any person in this state in a policy, contract, rider, indorsement, certificate, or similar contract document is void and of no effect. This does not apply to contract documents in use before that date, but does apply to any such document revised in any respect on or after that date.

MICH. ADMIN. CODE R. 500.2202

The effect of this prohibition is that a "de novo" standard of review applies to decision made under plans, unless the plan containing discretionary language was issued before July 1, 2007; then, an arbitrary and capricious standard of review applies.

This rule renders ineffective any discretionary clause included in a policy issued, or revised in any form, after July 1, 2007. And, the Sixth Circuit held that this rule is not preempted by ERISA. *Am. Council of Life Insurers v Ross*, 558 F. 3d 600 (6th Cir. 2009)

Defendant argues that the 'arbitrary and capricious' standard applies because the policy was in place prior to March 1, 2007, and the particular section of the document vesting the discretionary authority was not revised. Defendant admits that several other sections of the policy were amended after July 1, 2007. Essentially, Defendant argues that its policy is made up of independent contract documents; and since the particular document granting discretionary authority was not revised after July 1, 2007, Defendant should have the benefit of an arbitrary and capricious standard of review.

The Court rejects this argument.  The clear language of the statute is that the prohibition applies to "any such document revised in any respect on or after [July 1, 2007]."

Because the Court finds that the policy was revised after July 1, 2007, a *de novo* standard of review applies.

When reviewing a denial of ERISA benefits *de novo*, the Court must take a fresh look at the administrative record.  *Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609, 619 (6th Cir. 1998).  The prior decision of the administrator is not given any presumption of correctness.  *Id.* at 809.  This review is limited to evidence included in the administrative record, and the court, "must determine whether the administrator properly interpreted the plan and whether the insured was entitled to benefits under the plan."  *Id.*

When evaluating conflicting physician opinions, the treating physician's opinion is not afforded special weight.  *Black & Decker Disability Plan v. Nord,* 532 U.S. 822, 834 (2003).   However, "administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician."  *Id.* Furthermore, "when a plan administrator favors a conclusory independent medical consultant report over the findings of a claimant's treating physician, that decision may properly be considered arbitrary."  *Blajei v. Sedgwick Claims Mgmt. Serv., Inc.,* 721 F. Supp.2d 584, 602 (E.D. Mich. 2010) ( citing *Kalish v. Liberty Mut./Liberty Life Assur. Co. of Boston.* 419 F.3d 501, 509-10 (6th Cir. 2005), *Calvert v. Firstar Finance, Inc.,* 409 F.3d 286, 296-97 (6th Cir. 2005)).  While the arbitrary and capricious standard does not

apply in this case, the Court finds this case law persuasive in evaluating conclusory independent medical reports.

### b. The Requirement for Objective-Medical Evidence.

LLAC argues that its denial was based on a lack of objective medical evidence supporting Plaintiffs disability claims.  The plan requires the submission of objective medical evidence which includes: "chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits."  (LL-0011).

The Court disagrees that Plaintiff did not submit objective evidence.  Plaintiff submitted: multiple MRIs; multiple examination and physician statements; and Transcutaneous Electrical Nerve Stimulation ("TENS") injection records.  This evidence shows the existence of physical impairments, including lumbar stenosis, lumbar facet arthropathy, lumbar degenerative disc disease, and cervical herniated disc.  In fact, Dr. Esman, LLAC's paid file reviewer, acknowledges that these diagnoses are supported by medical evidence.  LL-0288.

The Court acknowledges that Plaintiff's subjective complaints of pain due to these medical conditions are not necessarily supported by objective medical evidence. But, by its very nature, pain is subjective, and LLAC can not ignore subjective complaints.  The policy states clearly that "'[p]roof' means the evidence in support of a claim for benefits and includes, **but is not limited to** [emphasis added], the following [objective medical evidence]."  (LL-0011).  As such, LLAC is obligated to take into account Plaintiff's subjective complaints of pain; this is something it did not do when it chose a file review over a physical examination of Plaintiff.

8

LLAC attempts to use *Boone v. Liberty Life Assurance Company of Boston*, 2005 U.S. App. LEXIS 28405 (6th Cir. 2005), to support its position that requiring objective medical evidence only, was appropriate.  *Boone* held that Plaintiff's subjective claims of pain due to a whiplash injury sustained from a car accident was insufficient to award benefits.   X-rays were submitted that showed minor impairments, but the doctor did not see any major impairments that would have caused the pain Boone complained of.  *Id.* at  **4, **6, and **10.  Similarly, a file review was performed where a nurse concluded that any minor impairments were a result of aging, and that there was no other physical cause of Plaintiff's subjective reports of pain.  *Id.* at **10.

This case can be distinguished.  In *Boone,* there was an absence of objective medical evidence showing the underlying condition that was the source of the pain. Here, Pierzynski submitted objective medical evidence showing physical impairments. Pierzynski's own treating physicians asserted that these impairments cause the pain. Furthermore, LLAC's own Dr. Esman concludes there is objective evidence substantiating the underlying condition and that these conditions cause pain.  Unlike *Boone*, there is objective medical evidence of the underlying condition that causes Pierzynski's pain; LLAC's own doctor agreed.

LLAC is correct that the issue is not whether Plaintiff suffers from an underlying back problem, but whether that underlying condition is so debilitating that it precludes Plaintiff from performing her job duties.  LLAC argues no objective medical evidence supports the degree of pain reported by Plaintiff.

9

While LLAC's doctors do not agree that the underlying conditions would cause this level of pain, Plaintiff's doctors conclude the opposite.  The two sets of doctors rely on the same medical records.

The Court concludes that Plaintiff submitted objective medical evidence in support of her underlying condition.  The only question is whether pain associated with these underlying conditions qualifies as a disability under the policy.

### c.  Plaintiff's Long Term Disability Under "Own Occupation" Standard.

It is undisputed that Plaintiff's job is a sedentary one.  Aside from her technical and managerial requirements, she must be able to:

> [e]xert[] up to 10 pounds of force occasionally . . . and/or a negligible amount of force frequently . . . to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time.  Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

LL-0412

Additionally, the position has positional requirements: "**[o]ccasional** standing/walking, **[f]requent** handling and fingering, **[c]onstant** sitting [emphasis in original]."  (LL-0412).

Plaintiff's argument that she cannot perform the material and substantial duties of her job is convincing.  Her treating physicians all supported the underlying medical diagnosis.  Their opinions are not afforded a presumption of correctness, but they did

10

2:10-cv-14369-VAR-MJH   Doc # 33   Filed 08/08/12   Pg 11 of 14   Pg ID 1318

conduct a series of physical evaluations over an extended period of time. Plaintiff's doctors are in a better position to observe, evaluate, and judge subjective levels of pain that may be caused by these underlying conditions.  Plaintiff's doctors are united in their view that Plaintiff's medical conditions -- and the pain associated with them --  restrict her ability to perform even a sedentary job.

LLAC's rejection of Plaintiff's subjective claims of disabling pain as a basis for the denial is inappropriate.  The policy requires that Plaintiff cannot perform the "Material and Substantial Duties of [her] regular occupation or any occupation with the company. . . ." (LL-008).  By its very nature, this is a subjective test.  Because another individual may be able to perform her job with some of the reasonable accommodations suggested by LLAC's physicians does not mean that these accommodations would have allowed Plaintiff to perform her job.

Furthermore, LLAC made a credibility determination concerning Plaintiff's subjective levels of pain based on its paid file reviewer's opinions.  Shortly after acknowledging objective medical evidence of physical impairment and that "given the degree of pain she has in the low back and lumbar region there are impairments and restrictions during the period . . ." Dr. Esman concluded that reasonable restrictions would allow Plaintiff to perform her job. (LL-0288-90).  This determination was not based on a physical examination, but on a review of medical documents submitted by Plaintiff.

Courts have held "where an administrator exercises its discretion to conduct a file review, credibility determinations made without the benefit of a physical examination

11

support a conclusion that the decision was arbitrary." *Helfam v. GE Group Life Assur. Co.,* 574 F.3d 383, 385-86 (6th Cir. 2009); *see also Smith v. Cont'l Cas. Co.,* 450 F.3d 253, 263-64 (6th Cir. 2006), *Clavert v. Firstar Fin., Inc.,* 409 F.3d 286, 296-97 (6th Cir. 2005).  Similarly, LLAC's paid file reviewers essentially discounted Plaintiff's subjective reports of pain without conducting a physical examination.  This is evidence that LLAC improperly denied Plaintiff's claim.

LLAC argues that it did conduct a physical examination through Dr. Bodnar in February 2009.  Dr. Bodnar's conclusion are questionable for several reasons.  He conducted his examination several months before the critical elimination period – the period of time where the claimant must be disabled.  Plaintiff says Dr. Bodnar did not perform a follow-up examination during or after the elimination period, when LLAC certainly had the right to perform such an examination.  (Doc. 27: Plaintiff's Response at 3.

Also, Dr. Bodnar was not given subsequent MRIs which showed Plaintiff's condition.  While LLAC argues there were only "inconsequential changes when compared to earlier MRIs," the determination of changes is based on its file review, and is not a universally accepted conclusion.  LLAC can hardly argue that Dr. Bodnar's opinion -- done prior to and without all the relevant medical data -- should be considered a genuine physical examination entitled to significant weight.

LLAC also argues that Plaintiff's doctors changed their opinions; therefore, they are entitled to less weight.  *See* Doc. # 28 at 9.  Relying on *Raskin v. UNUM Provident Corp.,* 2005 U.S. App. LEXIS 1838 (6th Cir. Feb. 3, 2005), LLAC says that Plaintiff's doctors changed their opinions without "justification for the change."  But, this is not

true.   Plaintiff's doctors always indicated that she suffered from certain conditions, and that her pain levels were intense.  LLAC's attempt to use the Nov. 17, 2009 examination by Dr. Kirouac as evidence of this change in opinion, is disingenuous.  LLAC argues that Dr. Kirouac observed that Plaintiff "appears quite well today;" however, LLAC omits the remainder of the examination; Plaintiff stated she was in less pain because she was not working.  Doc. #28 at 8; LL-0168.

The Court finds that Plaintiff is disabled according to the terms of the plan as it relates to her own occupation.  Plaintiff's doctors have provided verifiable medical diagnoses which are uncontroverted by LLAC.  While the level of pain caused by Plaintiff's diagnoses is disputed, the Court finds LLAC's arguments as to the degree of pain, and the reasonable accommodations that could be made, unpersuasive.

### d. Plaintiff's Long Term Disability Under "Any Occupation" Standard.

Plaintiff seeks judgment under the 'any occupation' standard.  However, the Court declines to grant it;  LLAC has not had the opportunity to evaluate Plaintiff under this standard.

## V.  CONCLUSION

The Court **GRANTS** Plaintiff's Motion to the extent she seeks benefits under the "own occupation" standard.  The Court **DENIES** Plaintiff's Motion to the extent that she seeks benefits under the "any occupation" standard.  Defendant's motion is **DENIED.** Plaintiff is owed benefits for the duration of this "own occupation" period (January 18, 2010 to January 18, 2012), together with interest, costs and attorney fees.

This matter is remanded to the insurer for a determination of eligibility for benefits under the "any occupation" definition.

13

**IT IS ORDERED**.

                                        /s/ Victoria A. Roberts
                                        Victoria A. Roberts
                                        United States District Judge

Dated:  August 8, 2012

The undersigned certifies that a copy of this
document was served on the attorneys of
record by electronic means or U.S. Mail on
August 8, 2012.

S/Linda Vertriest
Deputy Clerk